**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 1:25-MJ-225** |
| **KEVONTE STEWART,**<br>**Defendant.** | |

### EMERGENCY REQUEST TO VACATE MAGISTRATE JUDGE FARUQUI'S SEPTEMBER 29 ORDER REFUSING TO ACCEPT A GRAND JURY RETURN (ECF 12)

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, for the reasons described below, respectfully requests emergency review by the Chief Judge of the erroneous and legally unsupported order by Magistrate Judge Zia M. Faruqui, dated September 29, 2025, in which he "refused to take [a] grand jury return" from the foreperson of a Superior Court grand jury, ECF 12 at 3, and wrongfully accused the government, in front of the foreperson, of misconduct and unlawfulness.

Magistrate Faruqui's actions are legally unsupported, are inflammatory, have already interfered with and tainted the community's grand juries, and show a clear bias against the Government that is not based in rational or objective facts. To the contrary, the U.S. Attorney's Office has used Superior Court grand juries to return federal indictments for decades and the practice is well-supported in black-latter law. Simply put Judge Faruqui has chosen to ignore the law.

The United States requests that this Court vacate Judge Faruqi's order, strike it from the record, and order him to receive the indictment returned by the Superior Court grand jury in this case. The United States further requests that this Court cure Judge Faruqi's inflammatory misstatements of law and improper conduct by including the following in its order to vacate, which can be presented to the now tainted Grand Jury: (1) the request by the U.S. Attorney's Office for the Superior Court grand jury to return a federal indictment was entirely legal and has been a proper practice for decades; (2) the U.S. Attorney had the authority to represent the matter to any grand jury in this district after another grand jury declined to return an indictment; (3) the U.S. Attorney's Office had no duty to inform the grand jury of the actions of any prior grand jury that had considered the case; and (4) Judge Faruqi's comments before the grand jury foreperson were improper, legally and factually unsupported, and should be disregarded.

This Court has the authority to vacate Judge Faruqi's Order and order Judge Faruqi to accept the returned indictment pursuant to Local Rule 57.14. The D.C. Circuit held in *United States v. Seals*, 130 F.3d 451 (D.C. Cir. 1997), that pursuant to D.C. Code § 11-1916 a Superior Court grand jury is empowered to return an indictment to this Court. Judge Faruqi has unlawfully usurped the Article III power of District Court Judges to review and dismiss indictments, the Article II power of the Executive to present cases to whatever competent grand jury it wishes, and the

power that the Congress[1] gave to the Superior Court grand jury to "take cognizance of all matters brought before it regardless of whether an indictment is returnable in the Federal or District of Columbia courts," D.C. Code § 11-1916.

This matter is ripe for emergency review because the adversarial briefing and appointment of amicus curiae ordered by Judge Faruqui are not authorized by the Federal Rules of Criminal Procedure and the holdings of the Supreme Court. The law contemplates a grand jury returning an indictment to a federal magistrate judge, Fed. R. Crim. P. 6(f), the defendant being arraigned on that indictment, Fed. R. Crim. P. 10, the defendant filing any motions to dismiss the indictment, Fed. R. Crim. P. 12, and the assigned District Judge ruling on any dispositive motions, *United States v. Raddatz*, 447 U.S. 667, 676 (1980). Ignoring the law, Judge Faruqui has invented a procedure whereby he, as a magistrate judge can, *sua sponte*, refuse to accept an indictment returned by a grand jury and, *sua sponte*, order adversarial briefing and appoint co-counsel to address a dispositive matter before the case reaches the bench of a District Judge. This Court cannot allow this improper practice to proceed any further.

Judge Faruqui's order and on-the-record comments, in front of the grand jury foreperson, also violate the cannons of judicial conduct and require curative action to remedy his widely disseminated, disparaging comments. The foreperson of the Superior Court grand jury heard Judge Faruqui's comments in open court, which

---

[1] The Congress granted the Superior Court grand juries this authority in 1986. An Act to establish an independent jury system for the Superior Court of the District of Columbia, Pub. L. No. 99-650, § 1916, 100 Stat. 3635 (1986).

certainly tainted the grand jury, and other grand jurors in this district have certainly read Judge Faruqui's false accusation that the U.S. Attorney's Office has "[m]ore than likely" acted "unlawfully," which was published in the New York Times.[2] Judge Faruqui's order and  comments suggest that his "impartiality might reasonably be questioned." Pursuant to cannon 3(B)(6) of the Code of Conduct for United States Judges, this Court has a duty to "take appropriate action upon receipt of reliable information indicating the likelihood that [Judge Faruqui's] conduct contravened this Code."[3]

## I. BACKGROUND

On September 18, 2025, Judge Faruqui issued the criminal complaint in this case, finding that there was probable cause to believe that the defendant unlawfully possessed a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). ECF 1. The same day, the defendant appeared before Judge Faruqui for his initial appearance. The next day, September 19, 2025, Magistrate Judge Matthew J. Sharbaugh ordered the defendant detained, finding him to be a danger to the community, and set a preliminary hearing in this matter for Tuesday, September 30, 2025, at 9:30 AM.

On Friday, September 26, 2025, Grand Jury 25-3 in the United States District Court declined to return an indictment charging the defendant with the violation of

---

[2] Alan Feuer, *In Unusual Move, Prosecutors Secure Federal Charges From Local Grand Jury*, NY Times (Sept. 30, 2025), *available at* https://www.nytimes.com/2025/09/30/us/politics/federal-charges-grand-jury-dc.html.

[3] CODE OF CONDUCT FOR UNITED STATES JUDGES, 3(B)(6), *available at*, https://www.uscourts.gov/administration-policies/judiciary-policies/ethics-policies/code-conduct-united-states-judges#b Canon 3(B)(5) (the "Canons").

18 U.S.C. § 922(g)(1). ECF 9. The same day, the foreperson appeared in Court before Judge Sharbaugh to report the lack of concurrence pursuant to rule 6(f) of the Federal Rules of Criminal Procedure. And then Judge Sharbaugh held an emergency status hearing and released the defendant at defense counsel's request. In light of the defendant's release, the government requested that the preliminary hearing be moved from September 30, 2025, to October 8 or 9, 2025. *See* Fed. R. Crim. P. 5.1(c). The Court declined to do so at that time, but set a hearing on Monday, September 29, 2025, at 12:30 PM, to swear the defendant into release conditions and consider the government's request.[4] Also on Friday, September 26, 2025, the government contacted the clerk's office and Judge Faruqui's chambers, advising that it expected to present the case to a grand jury empaneled in the Superior Court for the District of Columbia and requesting that the court be prepared to receive an indictment if one was returned. The government cited D.C. Code § 11-1916 as the basis for its request.

On September 29, 2025, the government presented the case to Superior Court grand jury September 4, pursuant to D.C. Code § 11-1916, and the grand jury voted to return the indictment. That same afternoon, the government appeared before Judge Faruqui with the foreperson to return the indictment. During the hearing, the AUSA presented the legal authority for the Superior Court grand jury to return the indictment, including D.C. Code § 11-1916, *United States v. Seals*, 130 F.3d 451 (D.C. Cir. 1997), *United States v. Brown*, No. 07-75, 2007 WL 2007513, at *1 (D.D.C. July

---

[4] On the afternoon of September 29, 2025, the Court continued the preliminary hearing to October 9, 2025.

9, 2007), *United States v. Allen*, 729 F. Supp. 120 (D.D.C. 1989), and the federal indictment returned to this Court by a Superior Court grand jury in *United States v. Clark*, 18-cr-338 (D.D.C. Nov. 15, 2018). Transcript, *United States v. Stewart*, 25-mj-225 (D.D.C. Sept. 29, 2025), at 2–4. After taking a recess to consider the legal authorities presented by the Unitied States, Judge Faruqui resumed the bench and declined to accept the return. Then in front of the foreperson, Judge Faruqui made multiple inflammatory comments, including stating, "Before today, before three weeks ago, if this would have happened, I wouldn't even have given it a second thought, but I am now in the unfortunate situation, as I have said before, I no longer trust that when prosecutors are coming forward, they are doing things because their managers want the right thing to be done." *Id*. at 8.

In his written order, Judge Faruqui reiterated his inflammatory points, appointed the Federal Public Defender as co-counsel, and ordered briefing. ECF 12.[5] Refusing to acknowledge any of the legal authority the United States cited, Judge Faruqui accused the United States of acting "very unseemly" and "more than likely . . . unlawful[y]" and of breaking "decades-long norms and the rule of law." *Id*. at 2–3. The sad irony is that this practice is entirely lawful, has been accepted by Magistrate Faruqui's colleagues without incident, and has been used for over thirty-five years.

---

[5] The order questions why the government did not wait longer to seek an indictment and points to the October 9, 2025, date for the preliminary hearing. But Judge Faruqui ignores the fact that the United States sought to appear in the grand jury on September 29, 2025, before the preliminary hearing was moved to October 9, 2025.

## II. ARGUMENT

### A. This Court has authority to review the order.

The Rules of the United States District Court for the District of Columbia delineate the role of the Chief Judge in reviewing decisions of the magistrate judges and handling matters related to the grand jury. Local rule 57.14(b) states that "one of the duties of the Chief Judge is to empanel the grand jury and hear and determine all matters relating to proceedings before the grand jury." D.D.C. Ct. R. 57.14(b). It also assigns to the Chief Judge the duty to "hear and determine requests for review of rulings by magistrate judges in criminal matters not already assigned to a district judge." *Id.* at 57.14(e). Here, because the magistrate judge has issued an order and the underlying matter is not already assigned to a district judge, the Chief Judge should review it. Moreover, since the order directly implicates the grand jury's functioning, the Chief Judge is within his authority to "determine all matters relating to proceedings before the grand jury." *Id.* at 57.14(b).[6]

### B. The Congress empowered Superior Court grand juries to return indictments to this Court.

Rule 6(f) provides that following a vote to indict, "[t]he grand jury—or its foreperson or deputy foreperson—must return the indictment to a magistrate judge in open court." Fed. R. Crim. P. 6(f). Once the foreperson appears in open court to submit the return, the role of the grand jury is complete. *United States v. Michael*,

---

[6] This request is also consistent with the judicial canons applicable to any judge supervising a different judge. Canon 3(B)(5) provides that a "judge with supervisory authority over other judges should take reasonable measures to ensure that they perform their duties timely and effectively."

180 F.2d 55, 56 (3d Cir. 1949). The Rules of the United States District Court for the District of Columbia set forth in clear terms the "duty" of the magistrate judge to "receive indictments returned by the grand jury." D.D.C. Ct. R. 57.17(a)(5).

D.C. Code § 11-1916(a) states that "[a] grand jury serving in the District of Columbia may take cognizance of all matters brought before it regardless of whether an indictment is returnable in the Federal or District of Columbia courts."

In *United States v. Seals*, 130 F.3d 451 (D.C. Cir. 1997), the D.C. Circuit held that section 1916 permitted a Superior Court grand jury to return an indictment to this Court. In that case, the United States secured an indictment alleging violations of federal law before a grand jury empaneled in the Superior Court. *See* Indictment, *United States v. Seals*, No. 95-cr-284 (D.D.C. Oct. 31, 1995), ECF 1. The defendant moved to dismiss the indictment on the basis that section 1916 was unconstitutional and that it "deprive[d] them of the constitutional safeguards associated with Article III supervision of federally-indicting grand juries." *Seals*, 130 F.3d at 456 n.3. The D.C. Circuit rejected this argument. The court acknowledged that "section 1916(a) is applicable only to the unique federal enclave." *Id*. at 457 (internal quotation marks omitted). But the court reasoned that "the power to supervise a federally-competent grand jury cannot fairly be described as an essential attribute of the judicial power of the United States." *Id*. at 459 (internal quotation marks omitted). The court concluded, "While the grand jury arrangement in the District of Columbia may be unique, 'our constitutional principles of separated powers are not violated . . . by mere anomaly or innovation.'" *Id*. at 460 (quoting *Mistretta v. United States*, 488 U.S. 361,

385 (1989)). More recently, section 1916 allowed a grand jury empaneled in the Superior Court for the District of Columbia to return an indictment in federal court. *See, e.g.,* Indictment, *United States v. Monroe*, 24-cr-321 (D.D.C. July 15, 2024), ECF 1; Indictment, *United States v. Clark*, 18-cr-338 (D.D.C. Nov. 15, 2018), ECF 6.

Judge Faruqui had no legal basis to decline to accept the indictment returned by the Superior Court grand jury pursuant to D.C. Code § 11-1916. The Superior Court grand jury—empaneled from the same body of citizens in the District of Columbia as the grand juries that sit in the federal courthouse, *see Seals*, 130 F.3d at 460—heard the evidence in the case and voted to indict the defendant. Consistent with rule 6(f), the foreperson appeared before Judge Faruqui on September 29, 2025, to return the indictment. The attendant paperwork was submitted to the Court for review.

As described above, this procedure has been used in *Seals* and in *Clark*. Any suggestion that the presentation of this case to a Superior Court grand jury amounts to forum shopping simply ignores the fact that the Congress, in section 1916, granted Superior Court grand juries the power to "take cognizance of all matters brought before it regardless of whether an indictment is returnable in the Federal or District of Columbia courts" and that the grand jurors empaneled in Superior Court and District Court come from the same pool of people.

Bottom line, Judge Faruqui attempts to draw a distinction between a "federal" and a "local" grand jury, but the Congress and the D.C. Circuit have held that there

is no such distinction. This Court should accordingly order Judge Faruqui to receive the indictment the Superior Court grand jury voted to return.

### C. Judge Faruqui has seized Article III power reserved for district judges.

"Congress made clear . . . that the magistrate acts subsidiary to and only in aid of the district court. Thereafter, the entire process takes place under the district court's total control and jurisdiction." *United States v. Raddatz*, 447 U.S. 667, 681 (1980); *see also Gonzalez v. United States*, 553 U.S. 242, 245 (2008). Thus, the power of the magistrate judge is limited. *United States v. Garcia*, 936 F.3d 1128, 1136 (10th Cir. 2019). Dispositive matters, such as the decision whether to dismiss an indictment, are within the purview of the Article III judge. *See Raddatz*, 447 U.S. at 676. A magistrate judge does not have the power to "dismiss or quash an indictment." 28 U.S.C. § 636(b)(1)(A).

By refusing to allow the Superior Court grand jury to return an indictment that is legally valid on its face,[7] Judge Faruqui's order is a functional end run around the authority of a district judge to dismiss—or refuse to dismiss—an indictment. In

---

[7] *Lawn v. United States*, 355 U.S. 339, 349 (1958) (declining to allow the inspection of grand jury minutes and stating "this Court has several times ruled that one indictment returned by a legally constituted nonbiased grand jury, like an information drawn by a prosecutor, if valid on its face, is enough to call for a trial of the charge on the merits and satisfies the requirements of the Fifth Amendment."); *Costello v. United States*, 350 U.S. 359, 363 (1956) ("An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.").

issuing this order, Judge Faruqui ignored that he "acts subsidiary to and only in aid of the district court." *Raddatz*, 447 U.S. at 681.

The contrary result would allow a magistrate judge to abuse his limited role, dismissing an indictment he views as unseemly before it reaches the bench of a district judge. The Congress allows a magistrate judge to perform limited functions. *Gonzalez*, 553 U.S. at 245; 28 U.S.C. § 636. Here, Judge Faruqui's function—and duty— was to "receive" the indictment. D.D.C. Ct. R. 57.17(a)(5).

And to the extent that the defendant wishes to challenge the indictment, he has a mechanism to do so: he can file a motion to dismiss pursuant to rule 12(b)(3)(A)(v) before an Article III judge, allowing our adversarial, constitutionally delineated, process to play out. *United States v. Sutton*, No. CR 21-0598, 2022 WL 4653216, at *2 (D.D.C. Sept. 30, 2022). This Court should accordingly vacate Judge Faruqui's order appointing co-counsel and inviting briefing on this matter.

### D. Judge Faruqui has invaded the Article II power of the U.S. Attorney

The Executive branch enjoys the authority to submit charges to a new grand jury after another grand jury has refused to do so. *United States v. Williams*, 504 U.S. 36, 49 (1992) (citing *Ex parte United States*, 287 U.S. 241, 250–251 (1932)); *In re U.S.*, 441 F.3d 44, 63 (1st Cir. 2006) ("As one commentator has noted, '[t]he longstanding federal rule is that resubmissions [of an indictment after one grand jury refuses to indict] are permissible, without court approval, even when the prosecutor presents no additional evidence to the second grand jury.' 4 LaFave et al., *Criminal Procedure* § 15.2(h), at 284–85 (2d ed. 1999).") "Incidental to the functions confided in Article II

is 'the power to perform them, without obstruction or impediment.'" *Trump v. Vance*, 591 U.S. 786, 810 (2020) (citation and quotation omitted).

The Supreme Court has held that a U.S. Attorney is empowered to "present[] to one grand jury charges which a previous grand jury has ignored." *See United States v. Thompson*, 251 U.S. 407, 414–15 (1920).[8] In considering whether a judge could insert himself into the process and require judicial approval before a U.S. Attorney presented charges to a second grand jury, the Court held that such action "is so incompatible with the general principles governing the subject as to cause it to be, in substance, . . . a mere disregard or repudiation of the principles themselves." *Id.* at 414. In reaching this conclusion, the Supreme Court noted that the improper "exercise of judicial discretion" in controlling grand jury presentations would "destroy[]" the "right of the grand jury to consider" cases and U.S. Attorney's "coterminous" authority to present them. *Id.* at 415. Bottom line, Judge Faruqui has no authority to infringe the U.S. Attorney's right to present and represent charges to one or more grand juries.[9]

---

[8] The Supreme Court in *Thompson* also found fault with a lower court's dismissal of an indictment because "comprehensively considering the subject, the assertion of the judicial discretion which was the basis of the judgment below is incompatible with the spirit and purpose underlying the admitted principles as to the power of grand juries, and the right of the government to initiate prosecutions for crime, since in the case stated such powers are controlled, not by a rule of law, but depend upon a mere exercise of judicial discretion." *Id*.

[9] *See also United States v. Pabian*, 704 F.2d 1533, 1537 (11th Cir. 1983) ("The decision to resubmit is a matter of prosecutorial discretion not generally subject to judicial scrutiny.") (citing, inter alia, *United States v. Batchelder*, 442 U.S. 114, 124 (1979)).

In this case, Judge Faruqui suggested that the United States should proceed before a federal grand jury despite the Congress affording the same power to Superior Court grand juries. Judge Faruqui's admonishment is contrary to black-letter law and the separation of powers. A "judge in our system does not have the authority to tell prosecutors which crimes to prosecute or when to prosecute them. Prosecutorial discretion resides in the executive, not in the judicial, branch, and that discretion, though subject of course to judicial review to protect constitutional rights, is not reviewable for a simple abuse of discretion." *United States v. Giannattasio*, 979 F.2d 98, 100 (7th Cir. 1992) (citing, inter alia, *Wayte v. United States*, 470 U.S. 598, 607–08 (1985)). Indeed, courts have been admonished for intruding into the prosecutor's prerogative to investigate and indict criminal cases.[10]

Because Judge Faruqui has attempted to substitute his own judgment for that of the Executive, his order is nothing less than an "obstruction or impediment" to the Executive's authority under Article II. *See Vance*, 591 U.S. at 810. Accordingly, this Court should vacate Judge Faruqui's order and issue an order correcting his inflammatory misstatement of law regarding the U.S. Attorney's right to present and represent cases to any grand jury in this district.

---

[10] *See, e.g.*, *In re U.S.*, 441 F.3d 44, 63 (1st Cir. 2006) ("Since Rule 6 authorizes the prosecution's use of sequential grand juries, the district court's investigation ran the risk of violating the principle of separation of powers by interfering with the constitutional prerogatives of the executive branch and of the grand jury."); *United States v. Derrick*, 163 F.3d 799, 824-25 (4th Cir. 1998) ("[T]he district court was without authority to comment upon the government's capital gains investigation. The caselaw is legend from the Supreme Court and the courts of appeals that the investigatory and prosecutorial function rests exclusively with the Executive.").

*E. Judge Faruqui's comments and order violate the judicial canons and reasonably call into question his impartiality.*

Inherent among the duties of a member of the judiciary is adherence to a strict set of canons. Fundamental among them is Canon 2, regarding the appearance of impropriety by a member of the judiciary. Canon 2(B) states, in relevant part, "A judge should not allow . . . political . . . relationships to influence judicial conduct or judgment." In addition to the duty to set aside politics, Canon 3 requires impartial administration of duties. Canon 3 states, "The judge should perform those duties with respect for others, and should not engage in behavior that is harassing, abusive, prejudiced, or biased." Canon 3(A)(1) states, in relevant part, that a judge "should not be swayed by partisan interests, public clamor, or fear of criticism." And Canon 3(A)(3) states, "A judge should be patient, dignified, respectful, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity." Finally, Canon 3(C)(1)(a) requires a judge to disqualify himself in any matter "in which the judge's impartiality might reasonably be questioned, including . . . instances in which . . . the judge has a personal bias or prejudice concerning a party[.]" The standard for recusal is no doubt high, but is satisfied when a judge "evidence[s] such deep-seated favoritism or antagonism as would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 541 (1994).

In this case, Judge Faruqui far exceeded his authority to preside over the return of a grand jury indictment. Even more problematic, however, is the political diatribe contained within his order. For example, Judge Faruqui inappropriately opined that "[a]t a minimum, [the indictment is] very unseemly; more than likely, it

is unlawful. Not to mention, this only deepens the growing mistrust of the actions of prosecutors." ECF 12 at 2. After spending paragraphs longing for the days when prosecutors did "not look for loopholes" but instead "sought justice" and after describing "haunting" Supreme Court opinions and after expressing his "surprise[e] that the government was willing to sacrifice its credibility" and after concluding that the United States was "breaking . . . decades-long norms and the rule of law," Judge Faruqui then ordered additional legal briefing. *Id.* at 3. Glaringly absent from Judge Faruqui's consideration was the undisputed legal authority the United States gave him.

Judge Faruqui's bloviate first and consider the law later approach is just the latest example of his demonstrated prejudice against the U.S. Attorney and the Trump administration. Similar to his self-fulfilling assertion that there is a "growing mistrust of the actions of prosecutors," in a May 6, 2025, order, Judge Faruqui pointed to the resignations of Department of Justice employees and a statement of the U.S. Attorney regarding his review of prior prosecutions, concluding that "[t]rust that had been earned over generations has been lost in weeks." Order, *In re: Search of One Device and Two Individuals Under Rule 41*, 25-sw-82 (D.D.C. May 6, 2025).

And during a September 4, 2025, hearing, Judge Faruqui lamented the recent surge of law enforcement in the district, complaining that "there seems to be a complete disregard for the traumatic effect that's having not just on the city, its citizens, the court, the AUSAs who are working all night and day to satisfy some sort of, you know, whatever this fantasy is or idea that there's going to be some great

showing." Transcript of Status Hearing, *United States v. Dana*, 25-mj-152 (D.D.C. Sept. 4, 2025), at 5. Later in the hearing, Judge Faruqui complained about a social media post, press release, and press conference by the U.S. Attorney's Office. *Id.* at 8. He continued, "The rush to get statistics and numbers to impress I don't know who in the Twittersphere or the Truth Social or the social media world, that's not going to work. The court is not simply here to be a social media tool or a—some sort of way to just puff themselves up, people and the administration, to feel good that they're getting larger and larger numbers." *Id.* at 9. In a warning to the U.S. Attorney, Judge Faruqui said, "We need dedicated—what other people call the deep state, I would call principled AUSAs, principled Department of Justice employees, the ones who didn't get fired for no reason apparently." *Id.* at 13. Finally, Judge Faruqui complained, "Where is the management? Why is it that they have the time to issue the tweets and the social media and the press conferences and bring the guns over from the recent arrest that we had last week—which I had never seen in my time as an AUSA that we brought the firearms and had a press conference. There seems to be time for that. Where is the time to stand up for the line AUSAs and come to this courthouse so that they, who are working 24-hour shifts, are not the ones who are being forced to listen and be criticized." *Id.* at 14–15.

But more than creating the appearance of impartiality, his inflammatory language[11] has already led grand jurors to take Judge Faruqui at his word that they

---

[11] No doubt Judge Faruqui's picture and quips in an August 4, 2025, article in the New York Times by Alan Feuer put Judge Faruqui on notice that the same journalist would likely report his inflammatory statements. *See* Alan Feuer*, Judge*

should "mistrust . . . the actions of prosecutors." ECF 12 at 2. Members of the Superior Court grand jury that voted to return the indictment in this case met with a staff member at the U.S. Attorney's Office and told her that they read Judge Faruqui's statements in an article in the New York Times[12] and believed that the U.S. Attorney's Office had lied to them. No doubt other petite and grand jurors in this district have read the article and reached the same conclusion. Simply put, Judge Faruqui's toxic words have poisoned jurors—leading them to wrongfully conclude that the U.S. Attorney's Office is lying to grand juries and breaking the law.[13] Ordering Judge Faruqui to receive the indictment the Superior Court grand jury voted to return is not enough to un-ring the bell Judge Faruqui has been banging. This Court should accordingly state the following when it vacates Judge Faruqui's order: (1) the request by the U.S. Attorney's Office for the Superior Court grand jury to return a federal indictment was entirely legal and has been a proper practice for decades; (2) the U.S. Attorney had the authority to represent the matter to any grand jury in this district after another grand jury declined to return an indictment; (3) the

---

*Openly Doubts Government As Justice Dept. Misleads and Dodges Orders*, N.Y. Times (Aug. 4, 2025), *available at* https://www.nytimes.com/2025/08/04/us/politics/trump-justice-department-judges-courts.html.

[12] Alan Feuer, *In Unusual Move, Prosecutors Secure Federal Charges From Local Grand Jury*, NY Times (Sept. 30, 2025), *available at* https://www.nytimes.com/2025/09/30/us/politics/federal-charges-grand-jury-dc.html.

[13] Notably, during the hearing in front of the foreperson, Judge Faruqui inappropriately commented, "You can't even get grand juries returned now, because the public seems to have lost all faith in the process." (Transcript, *United States v. Stewart*, 25-mj-225 (D.D.C. Sept. 29, 2025), at 6).

U.S. Attorney's Office had no duty to inform the grand jury of the actions of any prior grand jury that had considered the case; and (4) Judge Faruqui's comments before the grand jury foreperson were improper, legally and factually unsupported, and should be disregarded.

### III. CONCLUSION

For all the foregoing reasons, and any additional points and authorities which may be cited by the government at a hearing on this motion, this Court should vacate Judge Faruqui's order, ECF 12, order Judge Faruqui to receive the indictment the Superior Court grand jury voted to return, and order Judge Faruqui to correct his inflammatory misstatements of law.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

 */s/ Jonathan R. Hornok*
JONATHAN R. HORNOK
Assistant United States Attorney
Chief of the Criminal Division